# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

ROGER KING,

    Plaintiff,

v.

ANGIELEA HENRY; PHYLLIS ALLEN; and
DR. GARDNER,

    Defendants.

CIVIL ACTION NO.: 6:15-cv-17

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint. (Doc. 27.) Defendants contend that Plaintiff's Complaint, as amended, fails to state a claim against them for deliberate indifference to Plaintiff's serious medical needs. (Id. at pp. 5–9.) However, as District Judge J. Randal Hall explained in his Order of February 3, 2016, "Plaintiff states a plausible claim that he has requested medical treatment from Defendants Henry, Allen, and Gardner, and those Defendants have disregarded those requests." (Doc. 22, p. 3.) Defendants also raise the shield of qualified immunity as to Plaintiff's claims. (Doc. 27-1, pp. 9–10.) However, Plaintiff's right to be free from deliberate indifference to his medical needs has long been clearly established. Consequently, I **RECOMMEND** that the Court **DENY** Defendants' Motion to Dismiss.

## BACKGROUND

Plaintiff's Complaint centers on allegations that he has been denied adequate treatment for Hepatitis C while incarcerated at Smith State Prison. (Doc. 1.) In my November 12, 2015,

Report and Recommendation, I conducted the requisite frivolity review pursuant to 28 U.S.C. § 1915A and recommended that Plaintiff's Complaint be dismissed for failure to state a claim. (Doc. 14.) I assessed whether Plaintiff stated a cognizable claim that Defendants acted with deliberate indifference to Plaintiff's medical needs in violation of the Eighth Amendment and determined that Plaintiff established a serious medical need by alleging that he has been diagnosed with Hepatitis C. (Id. at pp. 4–6.) However, I concluded that Plaintiff had not alleged that Defendants Angielea Henry and Dr. Gardner actually knew of his condition or received his requests for follow up treatment. Id. As to Defendants Phyllis Allen, Doug Williams, and Stanley Williams, I concluded that there were no allegations supporting a finding that these Defendants acted with deliberate indifference. (Id. at p. 6.)

I also recommended dismissal of Plaintiff's claims that Defendants violated his due process rights by denying his grievances. (Id. at pp. 6–7.) Additionally, I concluded that Plaintiff could not state a claim against Defendants for monetary damages in their official capacities due to Eleventh Amendment immunity and traditional principles of state sovereignty. (Id. at p. 7.) Lastly, I recommended that the Court deny Plaintiff's request for preliminary injunctive relief. (Id. at p. 8–9.)

At Plaintiff's request, the Court granted him an extension of time to object to the Report and Recommendation. (Doc. 17.) He then filed Objections, (doc. 20), as well as a brief in support of his Objections, (doc. 21). Herein, the Court refers to these documents collectively as "Plaintiff's Objections." In his Objections, Plaintiff provided additional information in support of his claims that Defendants were deliberately indifferent to his medical needs and that he will suffer harm if his medical needs are not met. (Id.) He alleged that he has not received any

treatment for his Hepatitis C and that, if left untreated, his condition will cause liver damage and potentially cancer. (Id. at p. 3.) Plaintiff further alleged that Defendants Henry, Allen, and Gardner were notified of his condition but failed to provide treatment. (Id. at pp. 3–4.) For example, Plaintiff stated that he submitted a medial requested to be treated for Hepatitis C on July 6, 2011, that the medical department did not respond to that request, and that he submitted a follow up request to Defendant Allen, the medical administrator. Id. He also stated that he submitted a request for treatment for Hepatitis C on July 22, 2014, and that Dr. Alston[1] did not address his request for Hepatitis C treatment despite responding to that request two days later. Id. Plaintiff further referenced grievances that he began to file in September of 2014 regarding medical personnel's "non-response" to his requests that he be treated for Hepatitis C. Id.

Construing Plaintiff's allegations in his Objections liberally and reading them in conjunction with those made in the Complaint, Judge Hall found that "Plaintiff states a plausible claim that he has requested medical treatment from Defendants Henry, Allen, and Gardner, and those Defendants have disregarded those requests. Accordingly, Plaintiff's deliberate indifference to serious medical needs claims will proceed against Defendants Henry, Allen, and Gardner." (Doc. 22, p. 3.) However, Judge Hall held that Plaintiff's claims against Defendant Stanley Williams, the former Warden of Smith State Prison, and Defendant Doug Williams, the current Warden, rely solely upon those Defendants' supervisory positions. Therefore, the Court dismissed all claims against Defendants Stanley Williams and Doug Williams. (Id. at pp. 3–5.)

---

[1] Plaintiff references Dr. Alston throughout his pleadings and identifies him as the former Medical Director of Smith State Prison in his Response to the Motion to Dismiss. (Doc. 32, pp. 9–10.) However, he has not named Dr. Alston as a Defendant in this lawsuit.

3

The Court also dismissed Plaintiff's due process claims and his official capacity claims for monetary damages and denied his request for a preliminary injunction. (Id. at pp. 5–6.)

After being served with Plaintiff's Complaint, Defendants Henry, Allen, and Gardner filed the instant Motion to Dismiss. (Doc. 27.) In response to that Motion, Plaintiff offers further allegations in support of his deliberate indifference claims. (Doc. 32.) Plaintiff states that he began requesting treatment for Hepatitis C on July 6, 2011. (Id. at p. 3.) However, as of April 14, 2016, he had still not received any treatment. Id. He states that he had a biopsy on April 11, 2014. (Id. at p. 4.) Following that biopsy, Plaintiff had an interview with Dr. Alston at Smith State Prison, who informed Plaintiff that his treatment would begin in approximately two weeks. Id. However, since that time, there has not been any treatment. Id. Plaintiff contends he has repeatedly requested treatment, including on July 22, 2014, September 29, 2015, and December 24, 2015. Id.

Plaintiff states that Defendant Henry is the Deputy Warden of care and treatment, Defendant Allen is the medical administrator, and Defendant Gardner is the medical director at the prison. (Id. at p. 6.) He states that none of these Defendants have provided any explanation for why he has not received treatment for Hepatitis C. Id. Plaintiff states that the Defendants "all knew of Plaintiff's serious medical needs[,]" and that they each individually refused to provide him treatment. (Id. at pp. 7–8.)

Plaintiff directly addresses Defendants' argument that he has not alleged that they were aware of his medical condition. Plaintiff states that, given the numerous requests for medical treatment and grievances he has filed and the Defendants' positions at the prison, "it is unreasonable to even assume" that they did not know of Plaintiff's medical condition. (Id. at

p. 9.) He specifically points to Defendants' responses to his grievances and requests for medical treatment that he submitted to Defendants "on various occasions" as evidence of Defendants' deliberate indifference to his medical needs. (Id. at p. 8.) He contends that his grievances filed on August 28, 2014, and September 29, 2015, directly mentioned Defendant Dr. Gardner. (Id. at pp. 10–11). He states that Defendant Allen reviewed his grievances regarding his lack of treatment and that her name is on the grievance response. (Id. at pp. 5, 12.) He goes on to allege that prison policy required all three Defendants to confer together when he filed his grievances regarding the continuing denial of medical treatment. Id. "These defendants know Plaintiff is already diagnosed with hep-c as evidenced by his medical records, and failed to or refuses to arrange for appropriate treatment for Plaintiff hep-c virus even [in] the face of his repeated requests after denial of his grievance which merely asked to be treated for hep-c." (Id. at p. 10.) Plaintiff states Defendant Gardner recently notified Plaintiff that he has "fibrotic change and significant scarring of his liver", which are conditions associated with cancer. Id.

Plaintiff attached to his Response numerous medical requests and grievances that he has filed regarding his Hepatitis C treatment. The dates of these requests range from June 30, 2011, to March 27, 2016. (Id. at pp. 16–23.) These records provide further evidence of Defendants' involvement in Plaintiff's Hepatitis C treatment (or lack of treatment). Defendant Allen signed the response to Plaintiff's July 6, 2011, request seeking treatment for Hepatitis C. (Id. at p. 19.) The Warden's September 23, 2014, grievance response states that Allen "reviewed your medical records." (Id. at p. 17.) It appears Defendant Gardner signed the response to Plaintiff's July 22, 2014, request for medical treatment. (Id. at p. 20.) The December 29, 2015, response to Plaintiff's medical request, through which Plaintiff again sought treatment for Hepatitis C, states

5

that Plaintiff was "seen by Dr. Gardner." (Id. at p. 22.) Likewise, the March 27, 2016, response to another medical request appears to bear Dr. Gardner's initials. Id.

**STANDARD OF REVIEW**

Under a Rule 12(b)(6) motion to dismiss, a court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice. Ashcroft, 556 U.S. at 678.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal punctuation and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id.

**DISCUSSION**

**I. Amendment of Plaintiff's Complaint through his Response to the Motion to Dismiss**

As an initial matter, although not properly styled as a motion to amend the Complaint, the substance of Plaintiff's Response clearly attempts to allege additional facts to support his claims. In light of Plaintiff's *pro se* status, the Court construes this pleading as a motion to amend the Complaint. See Newsome v. Chatham Cty. Det. Ctr., 256 F. App'x 342, 344 (11th Cir. 2007) (holding that, where *pro se* plaintiff's response to magistrate judge's recommendation alleged new facts, the response should have been construed as a motion to amend the complaint). "[C]onstruing additional facts in *pro se* responses to motions to dismiss as motions to amend is consistent with the accepted practice in this Circuit." Robbins v. Oubre, No. 5:13-CV-348 CAR, 2014 WL 4070851, at *1 (M.D. Ga. Aug. 15, 2014). Thus, the Court construes Plaintiff's response as a Motion to Amend his Complaint.

Further, the Court finds that Plaintiff should be granted leave to amend. "Under Federal Rule of Civil Procedure 15(a), a party may amend his complaint once as a matter of right within twenty-one (21) days after service of a motion under Rule 12(b), (e), or (f).[2] Even when a party may not amend as a matter of right, he may amend with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(b). "The court should freely give leave when justice so requires." Id. While leave to amend is generally freely given, it is by no means guaranteed. "The function of Rule 15(a), which provides generally for the amendment of pleadings, is to

---

[2] The Eleventh Circuit has made clear that the Prison Litigation Reform Act ("PLRA") does not change this right to amend. Brown v. Johnson, 387 F.3d 1344, 1349 (11th Cir. 2004) ("We agree with the majority of circuits that the PLRA does not preclude the district court from granting a motion to amend. Nothing in the language of the PLRA repeals Rule 15(a)."). Accordingly, the fact that the Court has already conducted a frivolity review of Plaintiff's Complaint and issued a Report and Recommendation does not deprive Plaintiff of his right to amend. Id.

enable a party to assert matters that were overlooked or were unknown at the time he interposed the original complaint or answer." 6 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1473. However, the decision on whether to grant a motion to amend is within the sound discretion of the trial court. Addington v. Farmer's Elevator Mut. Ins. Co., 650 F.2d 663, 666 (5th Cir. 1981). "In making this determination, a court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility of the amendment." Cooks v. United States, No. CV 114-195, 2015 WL 7069665, at *1 (S.D. Ga. Nov. 13, 2015) (quoting Saewitz v. Lexington Ins. Co., 133 F. App'x 695, 699 (11th Cir. 2005)).

Here, Plaintiff has already amended his Complaint. (Doc. 12.) Nonetheless, allowing Plaintiff limited leeway to amend his claims would not significantly delay this case. Through his Response to the Motion to Dismiss, Plaintiff does not add new claims or name new defendants. Rather, he seeks to cure potential pleading deficiencies that were pointed out in Defendants' Motion to Dismiss. Additionally, the Court has stayed discovery in this case at Defendants' request. (Doc. 29.)

Thus, it is prudent to allow Plaintiff to amend to include the allegations in his Response to the Motion to Dismiss. Further, the Court finds it appropriate to evaluate Defendants' Motion to Dismiss as it applies to Plaintiff's amended allegations and whether those allegations "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

**II.   Denial of Defendants' Motion to Dismiss for Failure to State a Claim**

Plaintiff contends Defendants violated his Eighth Amendment rights to adequate medical treatment. The Eighth Amendment's proscription against cruel and unusual punishment imposes

a constitutional duty upon a prison official to take reasonable measures to guarantee the safety of inmates. The standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327.

"The meaning of 'more than gross negligence' is not self-evident[.]" Id. In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the factors considered are: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Id. Moreover, a difference in opinion between the prison's medical staff and the prisoner as to diagnosis or course of treatment does not amount to a claim under the Constitution. Thigpen, 941 F.2d at 1505 (citation omitted). Only when deliberate indifference to an inmate's serious medical needs is demonstrated to be "repugnant to the conscience of mankind" or offensive to "evolving standards of decency" will it give rise to a valid claim of mistreatment under the Eighth Amendment. Id. "Deliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment. Moreover, when the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)).

Defendants do not contest that Plaintiff has a serious medical need. They also recognize that he alleges he submitted requests for medical treatment on several occasions. However, they attack the subjective prong of Plaintiff's deliberate indifference allegations by arguing that he has not alleged that they actually received those requests. (Doc. 27-1, pp. 5–9.) This argument ignores the plain allegations in Plaintiff's pleadings preceding the Motion to Dismiss. Plaintiff repeatedly alleged that he notified medical staff at Smith State Prison, including Defendants, of his need for Hepatitis C treatment and that these Defendants have ignored his requests. By arguing that Plaintiff did not submit enough specifics, such as when Defendants received his

10

medical requests, Defendants ask the Court to hold Plaintiff to a hyper-technical standard not warranted by Rule 12(b)(6).[3]

Defendants' argument on this front is even more easily rejected in light of Plaintiff's amendment of his claims through his Response. As described above, Plaintiff directly alleges that Defendants know that he has Hepatitis C, that he has submitted requests for treatment dating back to 2011, and that each Defendant has failed to arrange for him to receive treatment and ignored his requests. He also alleges that, given Defendants' positions at the prison, they would have been directly involved in reviewing his requests for medical care and grievances, which would have given them direct knowledge of his medical condition.[4] Further, he attaches documents which demonstrate that Defendant Allen reviewed his medical records and medical requests and that Defendant Gardner has been Plaintiff's treating physician. These allegations exceed "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft, 556 U.S. at 678.

Defendants also argue that "Plaintiff has not alleged facts showing that Defendants Gardner, Allen or Henry acted with conduct that was more than mere negligence." (Doc. 27-1, p. 9.) They contend that Plaintiff merely alleges "a difference in medical opinion" and "classic examples of a matter for medical judgment." (Doc. 27-1, p. 9 (quoting Adams v. Poag, 61 F.3d

---

[3] Defendants argue that "Plaintiff has not submitted Grievance Number 180311 into the record despite his claims that it notified Defendants of his need for Hepatitis C treatment." (Doc. 27-1, p. 8.) Defendants apparently forgot that they are moving to dismiss Plaintiff's Complaint at the beginning of the case, not for summary judgment after discovery.

[4] These allegations go beyond relying upon mere supervisory liability. As the Court explained in dismissing Plaintiff's claims against Doug Williams and Stanley Williams, in this Section 1983 action, Plaintiff cannot merely rely upon a defendant's supervisory position to hold that defendant liable under a theory of respondeat superior. However, Plaintiff goes much further as to Defendants Henry, Gardner, and Allen by alleging that, as a result of their positions, they are each aware of his Hepatitis C and have been personally involved in the failure to provide him treatment.

1537, 1545 (11th Cir. 1995), and Waldrop v. Evans, 871 F. 2d 1030, 1033 (11th Cir. 1989).) This argument is not credible in light of Plaintiff's allegations. Plaintiff does not take issue with the mode of treatment he has received. Rather, he repeatedly contends that he is not receiving any treatment at all. For example, in his Objections, he stated, "Plaintiff has not received as of this date, [December 13, 2015], any treatment for Hepatitis C[ ]", and he avers that he "has received no medical treatment." (Doc. 21, pp. 3, 5.) Likewise, in his Response to the Motion to Dismiss, he states that "there has been no treatment" and that he has requested medical treatment several times, but "no treatment has been provided for years." (Doc. 32, pp. 1, 6.)[5] Though it appears Plaintiff may have received some treatment in the past, he alleges Defendants have now withdrawn that treatment. In light of these allegations, Defendants cannot argue that Plaintiff merely disagrees with the type of treatment they are providing. See Brown v. Johnson, 387 F.3d at 1351 ("The defendants erroneously characterize [the plaintiff's] allegation of deliberate indifference as nothing more than "mere[ ] disagree[ment] with the treatment prescribed. [Plaintiff] complains of complete withdrawal of treatment[.] Taking the allegations in the complaint as true, the continuing disregard of Brown's HIV and hepatitis constitutes deliberate indifference.").

---

[5] The documents Plaintiff has attached to his Response also raise issues regarding a failure to provide treatment, not the type of treatment provided. (Doc. 32, p. 16, Aug. 28, 2014, grievance ("[medical staff] said they would set up an appointment. It is now going on five months and I have not seen the specialist."); id. at p. 17, Sept. 23, 2014, grievance response ("Atlanta has to schedule the appointment. Smith SP medical has no control over when this appointment gets scheduled."); id. at p. 19, June 30, 2011 health request ("I want to start my treatment for Hepatitis C now. I asked several times in the past. I hope Smith State Prison medical department treat me this time!"); id. at p. 20, July 22, 2014, health request ("When will my hepatitis treatments begin? Treatment ordered by specialists in the month of April 2014. Still have not begun treatment); p. 21, response to Apr. 29, 2015, medical request ("the provider will discuss with you treatment options").)

As Judge Hall found in his February 3, 2016, Order, Plaintiff has plausibly alleged that Defendants Henry, Allen, and Gardner have acted with deliberate indifference to Plaintiff's medical needs. Those claims have only been fortified by Plaintiff's Response to Defendants' Motion. Thus, the Court should **DENY** Defendants' Motion to Dismiss for failure to state a claim.

### III. Denial of Defendants' Motion to Dismiss Plaintiff's Claim as Untimely

The Court should also reject Defendants' contention that any claims related to Plaintiff's July 6, 2011, medical request are barred by the statute of limitations. (Doc. 27-1, p. 7.) As Plaintiff correctly points out in his Response, at this stage, this claim falls within the continuing violations doctrine. (Doc. 32, p. 11.)

Constitutional claims brought pursuant to Section 1983 "are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." Powell v. Thomas, 643 F.3d 1300, 1303 (11th Cir. 2011). In states where more than one statute of limitations exists, the forum state's general or residual personal injury statute of limitations applies to all Section 1983 actions filed in federal court in that state. Owens v. Okure, 488 U.S. 235, 236, 249–50 (1989). Georgia has a two-year statute of limitations for personal injury actions. O.C.G.A. § 9-3-33. Although state law determines the applicable statute of limitations, "[f]ederal law determines when the statute of limitations begins to run." Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003). As a general rule, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Id.

The continuing violation doctrine holds that a plaintiff's action is not time-barred where some of the alleged violations occurred within the statutory period, even though other violations did not, because the early acts were part of a continuing wrong. Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1221 (11th Cir. 2001). "The critical distinction in the continuing violation analysis is whether the plaintiff complains of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does." Lovett, 327 F.3d at 1183. Refusal to provide medical treatment has been held to constitute a continuing violation in some circumstances. See Shomo v. City of N.Y., 579 F.3d 176, 182 (2d Cir. 2009) (holding that "a policy of doctors and prison staff disregarding medical treatment recommendations" constitutes a continuing violation); Neel v. Rehberg, 577 F.2d 262, 264 (5th Cir. 1978) (refusal to provide medical treatment, shower, telephone, and visiting privileges to prisoner constitutes continuing wrong); Donaldson v. O'Connor, 493 F.2d 507, 529 (5th Cir. 1974) (holding that Section 1983 action brought by former mental patient for continuous civil confinement without psychiatric treatment did not accrue until the patient was released).

However, the Eleventh Circuit has "limited the application of the continuing violation doctrine to situations in which a reasonably prudent plaintiff would have been unable to determine that a violation had occurred." Ctr. for Biological Diversity v. Hamilton, 453 F.3d 1331, 1335 (11th Cir. 2006). "If an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine." Hipp, 252 F.3d at 1222. Even where a continuing violation for disregarding an inmate's need for surgery has been found, the Eleventh Circuit has held that

14

the cause of action accrues, and the statute of limitations begins to run, once the plaintiff receives the surgery. Robinson v. United States, 327 F. App'x 816, 818 (11th Cir. 2007) ("The facts, as alleged in the complaint, however, support an inference of continued disregard of Robinson's need of medical treatment for his hernia until October 3, 2003, when Robinson's hernia surgery was performed."). Similarly, once an inmate is transferred from the prison where the constitutional violation occurred to another facility, the statute of limitations clock begins to tick. See id. ("Plaintiff sufficiently alleges in his Complaint a continuing violation that did not end until he was transferred to another prison in May of 2007.")

Plaintiff alleges that Defendants have continually denied his requests for treatment for Hepatitis C from 2011 through April of 2016 when he filed his Response brief. (Doc. 32, p. 8.) It is not clear from the face of his Complaint that Plaintiff was armed with sufficient facts to bring his claims to the Court more than two years before he filed this lawsuit. Consequently, at this early stage, the Court should not dismiss any of his claims as time-barred, and it should **DENY** this portion of Defendant's Motion.

### IV. Denial of Defendant's Motion to Dismiss Based on Qualified Immunity

Defendants argue that they should enjoy qualified immunity as to Plaintiff's claims. (Doc. 27-1, pp. 9–10.) Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Lee v. Ferraro, 284 F.3d 1188, 1193–94 (11th Cir. 2002). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing

litigation[.]" Id. at 1194. "Qualified immunity should be applied at the earliest possible stage of litigation, and it is therefore appropriate to decide its applicability on a motion to dismiss. Often however, this is not possible, and for this reason it is more typically addressed at summary judgment." Horn v. Jones, No. 14-20341-CIV, 2015 WL 3607012, at *6 (S.D. Fla. May 8, 2015); see also Marshall v. Fla. Dep't of Corr., No. 10–20101–cv, 2011 WL 1303213, at *4 (S.D. Fla. March 31, 2011) ("[W]here it is not evident from the allegations of the complaint alone that a defendant is entitled to qualified immunity, the case will proceed to the summary judgment stage, *the most typical juncture at which defendants entitled to qualified immunity are released from the threat of liability and the burden of further litigation*.") (emphasis in original) (citation omitted).

To receive qualified immunity, Defendants must first establish that they were acting within their discretionary authority during the events in question. Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003). "A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority." Hill, 40 F.3d at 1185 n.17. Once the government official has shown that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)).

Here, Defendants acted within their respective discretionary duties when making decisions regarding Plaintiff's medical treatment. Thus, the burden shifts to Plaintiff to show that Defendants are not entitled to qualified immunity. Cottone, 326 F.3d at 1358. To make this

showing, Plaintiff must first establish the violation of a constitutional right on the facts alleged. Saucier v. Katz, 533 U.S. 194, 200 (2001); Gilmore v. Hodges, 738 F.3d 266, 272 (11th Cir. 2013). As explained above, Plaintiff has alleged conduct by Defendants that, if proven true, plausibly establishes a violation of deliberate indifference to Plaintiff's serious medical needs under the Eighth Amendment. Consequently, his Complaint, as amended, satisfies the first qualified immunity prong.

Having alleged a constitutional violation, Plaintiff must demonstrate that the constitutional right was clearly established at the time of the alleged misconduct. Saucier, 533 U.S. at 200.[6] "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202; Wilson v. Layne, 526 U.S. 603, 615 (1999). "The 'very action in question' does not have to have been previously held unlawful, but the unlawfulness of the conduct must be apparent in light of pre-existing law." Harris v. Coweta Cty., 21 F.3d 388, 393 (11th Cir. 1994) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Defendants do not contest that Plaintiff's right to receive medical treatment for his Hepatitis C was clearly established at the time of their alleged violations. Rather, they essentially only attack the first prong of the qualified immunity analysis by referencing their arguments as to whether Plaintiff states a claim for relief. (Doc. 27-1, p. 10 ("[Plaintiff] must show that his constitutional rights were clearly established at the time of the alleged violations in order to overcome the qualified immunity defense, but he cannot make this showing because, as shown above, the Complaint and Objections fail to plead a constitutional violation by

---

[6] The Supreme Court has clarified, however, that courts need not analyze these qualified immunity steps sequentially. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Defendants.").) Regardless, Eleventh Circuit precedent has long made clear that a prison official's failure to provide a prisoner treatment for his Hepatitis C violates the Eighth Amendment. See Brown, 387 F.3d at 1351 (prison medical administrator and physician's alleged complete failure to treat Hepatitis C condition amounted to deliberate indifference) Kimbell ex. rel Liddell v. Clayton Cty., Ga., 170 F. App'x 663 (11th Cir. 2006) ("[D]eliberate indifference to serious medical needs is a violation of clearly established law.") (citing Behrens v. Pelletier, 516 U.S. 299, 313 (1996)); Brown v. Johnson-Waters, No. 603CV071, 2007 WL 1136077, at *4 (S.D. Ga. Apr. 16, 2007) (finding that clearly established law gave fair notice to prison officials that interrupting medication prescribed to plaintiff and failure to treat Hepatitis C violated the constitution.).

Plaintiff plausibly alleges that Defendants violated his rights which have been clearly established for at least forty years. Estelle v. Gamble, 429 U.S. 97 (1976). Consequently, the Court should **DENY** Defendants' Motion to Dismiss based on qualified immunity.

## CONCLUSION

For all of the above-stated reasons, I **RECOMMEND** that the Court **DENY** Defendants' Motion to Dismiss. Additionally, upon denial of Defendants' Motion, the Court should lift the stay of discovery in this case.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28

U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 16th day of September, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA