# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### DIVISION

ROGER KING,

        Plaintiff,

    v.

ANGIELEA HENRY; PHYLLIS ALLEN; and
DR. GARDNER,

        Defendants.

CIVIL ACTION NO.: 6:15-cv-17

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Presently before the Court are Defendants' Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment. (Docs. 62, 64.) Defendants filed a Response to Plaintiff's Motion, (doc. 66), and Plaintiff filed Responses to Defendants' Motion, (docs. 67, 68). For the reasons which follow, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, **DENY** Plaintiff's Partial Motion for Summary Judgment, and **DISMISS** Plaintiff's Complaint.[1] I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff *in forma pauperis* status on appeal.

## BACKGROUND

Plaintiff contends that he was diagnosed with Hepatitis C by a doctor at Valdosta State Prison in 2007.[2] (Doc. 21, p. 3.) Plaintiff's Complaint centers on allegations that he was denied

---

[1] Although Plaintiff filed a Partial Motion for Summary Judgment, the Court views the facts and evidence in the light most favorable to Plaintiff.

[2] Plaintiff later states he was diagnosed with Hepatitis C in 2008 at Augusta State Medical Prison. (Doc. 64-2, p. 1.) Such a discrepancy is of no moment in analyzing the parties' Motions.

adequate treatment for Hepatitis C while incarcerated at Smith State Prison. (Doc. 1.) Specifically, Plaintiff alleges that he did not receive any treatment for his Hepatitis C for several years and that, due to not receiving treatment, he could have sustained liver damage or developed cancer. (Id. at p. 3.) Plaintiff further alleged that Defendants Henry, Allen, and Gardner were notified of his condition but failed to provide treatment. (Id. at pp. 3–4.) For example, Plaintiff stated that he submitted a medical request to be treated for Hepatitis C on July 6, 2011, that the medical department did not respond to that request, and that he submitted a follow-up request to Defendant Allen, the medical administrator. (Id.) He also stated that he submitted a second request for Hepatitis C treatment on July 22, 2014, and that Dr. Alston[3] did not actually address his request for Hepatitis C treatment, despite giving a response to that request two days later. (Id.) Plaintiff further references grievances that he began to file in September 2014 regarding medical personnel's "non-response" to his requests for Hepatitis C treatment. (Id.)

In response to Defendants' Motion to Dismiss, (doc. 27), Plaintiff offered further allegations in support of his deliberate indifference claims. (Doc. 32.) Plaintiff stated that he began requesting treatment for Hepatitis C on July 6, 2011. (Id. at p. 3.) However, as of April 14, 2016, he still had not received any treatment. (Id.) He stated that he had a biopsy on April 11, 2014. (Id. at p. 4.) Following that biopsy, Plaintiff had an interview with Dr. Alston at Smith State Prison, who informed Plaintiff that his treatment would begin in approximately two (2) weeks. (Id.) However, Plaintiff did not receive treatment within that time. (Id.) Plaintiff contends he has repeatedly requested treatment, including on July 22, 2014, September 29, 2015, and December 24, 2015. (Id.)

---

[3]  Plaintiff referenced Dr. Alston throughout his pleadings and identified him as the former Medical Director of Smith State Prison in his Response to the Motion to Dismiss. (Doc. 32, pp. 9–10.) However, he did not name Dr. Alston as a Defendant in this lawsuit.

Plaintiff stated that Defendants did not provide any explanation for why he has not received treatment for Hepatitis C. (Id.) Plaintiff stated that Defendants "all knew of Plaintiff's serious medical needs[,]" and that they each individually failed or refused to provide him appropriate treatment. (Id. at pp. 7–8, 10.) In fact, Plaintiff asserted that his viral load increased by 5,000,000 from the time he initially was treated in 2012 until he finally received more treatment in 2016. (Doc. 38, p. 3.)

In the instant Motion for Summary Judgment, Defendants assert Plaintiff cannot sustain his Eighth Amendment deliberate indifference claims against them and that they are entitled to qualified immunity. (Doc. 62.) In contrast, Plaintiff responds Defendants were deliberately indifferent to his serious medical needs and are not entitled to qualified immunity protection. (Docs. 64, 67, 68.)

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party

must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." See Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)).

## DISCUSSION

### I.    Deliberate Indifference to Medical Needs

Plaintiff's claims against Defendants require analysis and discussion under the Eighth Amendment of the United States Constitution. The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to "ensure that inmates receive adequate food, clothing shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle v. Gamble, 429 U.S. 97, 105 (1976)). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. In order to prevail on a deliberate indifference claim, a prisoner must: (1) satisfy the objective component by showing a serious medical need;

(2) satisfy the subjective component by showing a defendant's deliberate indifference to that need; and (3) show that the injury was caused by the defendant's indifference. Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007).

As to the first, objective component, a medical need is serious if it "'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187). In either situation, the medical need must be "one that, if left unattended, 'poses a substantial risk of serious harm.'" Farrow v. West, 320 F.3d 1235, 1246 (quoting Farmer, 511 U.S. at 834).

Under the second, subjective component, the Eleventh Circuit Court of Appeals has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Thus, the subjective component requires an inmate to prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).[4]

"Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011). Additionally, a defendant who "delays necessary treatment for non-medical reasons"

---

[4] Eleventh Circuit case law on whether a claim of deliberate indifference requires "more than *gross* negligence" or "more than *mere* negligence" is contradictory. Compare Goebert, 510 F.3d at 1327, with Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011). In Melton, the Eleventh Circuit found "more than mere negligence" to be the appropriate standard. 841 F.3d at 1223 n.2. Even so, at least two Eleventh Circuit unpublished cases post-Melton have continued to use the "gross negligence" standard. See, e.g., Woodyard v. Ala. Dep't of Corr., 2017 WL 2829376 (11th Cir. June 30, 2017); Sifford v. Ford, 2017 WL 2874517 (11th Cir. July 6, 2017). However, because the Eleventh Circuit explicitly addressed this issue in the published Melton case, this Court will apply the "more than mere negligence" standard.

or "knowingly interfere[s] with a physician's prescribed course of treatment" may exhibit deliberate indifference. Id. (citations omitted). In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the Court considers "the reason for the delay and the nature of the medical need." Farrow, 320 F.3d at 1246 (citing McElligott, 182 F.3d at 1255). When a claim turns on the quality of treatment provided, however, "'a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment' does not support a claim of deliberate indifference." Melton, 841 F.3d at 1224 (quoting Harris, 941 F.2d at 1505). In other words, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 104. Furthermore, deliberate indifference is not established when an inmate receives medical care, but "may have desired different modes of treatment." Hamm v. DeKalb Cty., 774 F.2d 1567, 1575 (11th Cir. 1985).

As case law establishes Hepatitis C is a serious medical need, Shaw v. Ajibade, No. CV311-027, 2013 WL 326208, at *7 (S.D. Ga. Jan. 8, 2013), the Court's analysis of the parties' Motions for Summary Judgment will focus on whether a rational juror, viewing all of the evidence in the light most favorable to Plaintiff, could conclude that Defendants were deliberately indifferent to Plaintiff's serious medical need.

### A.      Defendant Gardner

Plaintiff generally states the medical staff at Smith State Prison failed to treat his Hepatitis C from July 6, 2011, through 2016. (Doc. 64-1, p. 1.) According to Plaintiff, Defendant Gardner informed him he had fibrotic changes and significant scarring to his liver, which are associated with liver cancer. (Id. at p. 3.) Plaintiff asserts Defendant Gardner's lack of familiarity with the progressive nature of Hepatitis C led to him developing fibrosis, or

scarring, of the liver. (Doc. 67-1, p. 4.) Plaintiff avers Defendant Gardner said he was getting proper treatment for his Hepatitis C, although he avers he was receiving no treatment whatsoever, at least as recently as April 2016. (Doc. 32, p. 3; Doc. 62-9, p. 8.)

Defendant Gardner notes she is a licensed family medicine practitioner who was the Medical Director at Smith State Prison from June 1, 2014, until November 1, 2016. As part of her duties, Defendant Gardner maintains she provided hands-on medical care to inmates housed at Smith State Prison and scheduled consultations with medical specialists for the inmates there. (Doc. 62-1, p. 4.) Defendant Gardner states that, while she is familiar with the Hepatitis C virus and its symptoms and treatment, she does not have the expertise to determine whether a particular inmate should receive treatment for Hepatitis C. Rather, Defendant Gardner explains that determination is made by a gastroenterologist, in conjunction with the Georgia Department of Corrections' ("GDC") guidelines.[5] (Id.) Additionally, Defendant Gardner avers she did not determine what medications the inmate is prescribed for treatment of the Hepatitis C virus, as the GDC determines what specific medications are used to treat the disease.[6] According to

---

[5] "Hepatitis C has four different levels, beginning with level one and proceeding to level four, which is cirrhosis of the liver. A patient's stage represents the level of fibrosis, or scarring, on the liver from the Hepatitis C-induced inflammation. It typically takes eight to ten years for a patient to proceed from one stage to the next, and thus it may take three to four decades for a patient to reach stage four. However, if an inmate does not drink alcohol (which is not permitted in the [GDC] facilities) and does not take any medication that inflames the liver, it is not uncommon for the progression of the disease simply to stop. Due to the fact that the disease typically progresses very slowly, it is often not medically necessary for a patient in stage 1 or stage 2 of the disease to undergo treatment." (Doc. 62-4, p. 2.) Plaintiff had Stage 1 Hepatitis C. (See Doc. 62-5, p. 7.)

[6] "In 2012, the GDC used the medications Ribavirin and Pegasys to treat inmates with Hepatitis C, and the cure rate of these two drugs was between 54–63%. In 2013 and 2014, the GDC added the medications Boceprevir and Telaprevir to the Hepatitis C treatment regimen, (doc. 62-5, p. 12), and the cure rate improved up to 75%. However, inmates undergoing treatment for Hepatitis C with these medications had to take the medication for a number of weeks, during which the inmate would most likely experience severe flu-like symptoms with no guarantee that the treatment would fully eradicate the Hepatitis C virus." (Doc. 62-4, p. 3.) In 2015, Defendant Gardner "became aware that the [GDC] was considering and evaluating the use of a new medication, Harvoni, to treat inmates with Hepatitis C, as a replacement for the older medications of Ribavirin, Pegasys, Boceprevir, and Telaprevir. According to

Defendant Gardner, in order for an inmate to receive Harvoni as treatment for Hepatitis C, a Hepatitis C pre-therapy checklist setting forth lab work and other tests that had to be performed before an inmate could be considered for treatment has to be completed; treatment must be recommended by a gastroenterologist and approved by GDC's Medical Director. (Id. at p. 5.) If an inmate needed more specialized care than what the prison offered, Defendant Gardner alleges she was required to put in a consult request through the Utilization Management Department of the GDC. Defendant Gardner contends the Utilization Management Department schedules the time, place, and manner of the medical service, if that Department approves the requested service. (Id. at p. 6.)

Defendants assert Plaintiff underwent treatment for Hepatitis C in 2012, and that course of treatment failed. (Id.) Defendants also assert Plaintiff received medical care from the time his first treatment failed until Plaintiff received the Harvoni treatment in 2016. (Id. at pp.6–7.)[7] Defendant Gardner asserts she did not ignore Plaintiff's status as Hepatitis C positive. Rather, Defendant Gardner states she worked diligently as the Medical Director at Smith State Prison "to ensure [Plaintiff] received appropriate care for his Hepatitis C[,] as determined by [a gastroenterologist] and" GDC's guidelines.[8] (Id. at p. 11.)

The undisputed facts, including primarily Plaintiff's medical records, establish the following regarding Plaintiff's course of treatment for Hepatitis C. Plaintiff received treatment

---

the medical literature, Harvoni is administered to patients daily for a period of 12 to 24 weeks, has a cure rate of approximately 95% and has significantly fewer side-effects than older medications." (Id. at p. 4.)

[7]  The Court will discuss the medical care Plaintiff received from 2014 through 2016 in a more in-depth manner at a later juncture in this Report and Recommendation.

[8]  Defendants did not provide the Court with a copy of the applicable GDC guidelines. However, the Court was able to rely on Defendants' Affidavits, (docs. 62-4, 62-7, 62-8), and case law, Shaw, 2013 WL 326208, at *3 (setting forth the GDC's guidelines and protocols for inmates to receive treatment for Hepatitis C), as well as Plaintiff's failure to dispute Defendants' assertions as to these guidelines, in reaching its conclusions.

in 2012 for his Hepatitis C when the GDC used the medications Ribavirin and Pegasys, which had a 54–63% cure rate. (Doc. 62-4, pp. 3, 5.) Plaintiff's course of treatment was not successful at that time. (See Doc. 62-5, p. 1.) Plaintiff had a liver biopsy on April 10, 2014, which revealed mild chronic hepatitis, consistent with Hepatitis C, and globules. (Id. at pp. 2–4.) Dr. Alston had a follow-up with Plaintiff a week later and discussed the Hepatitis C treatment protocol. (Id. at p. 5.) Defendant Gardner became the Medical Director at Smith State Prison on June 1, 2014. (Doc. 62-4, p. 2; Doc. 67-1, pp. 2–3.) She reviewed the results of Plaintiff's biopsy on July 24, 2014, and wrote a consult request for another biopsy. (Doc. 62-5, pp. 6, 8.) However, Dr. Gardner cancelled the second biopsy request and re-wrote that request on September 18, 2014, for Plaintiff to visit Dr. Ayaz Chaudhary, a gastroenterologist. (Id. at pp. 9–10.) On October 23, 2014, Dr. Chaudhary noted Plaintiff had Stage 1, Grade 1 Hepatitis C and recommended Plaintiff have a follow-up for potential treatment for Hepatitis C in a year. (Id. at pp. 11, 16.) Defendant Gardner wrote a consult request for the same five (5) days later when she followed up on Plaintiff's visit with Dr. Chaudhary. (Id. at p. 14; Doc. 62-2, p. 5; Doc. 62-4, p. 6.)

Plaintiff had a follow-up visit with Dr. Chaudhary on October 6, 2015, and he noted Plaintiff should have another follow-up with him in January 2016 for treatment. (Doc. 62-5, p. 17.) The next day, Plaintiff put in a health services request form to begin treatment. Defendant Gardner wrote a consult request on October 8, 2015, for Plaintiff to see Dr. Chaudhary in January 2016 for possible treatment of his Hepatitis C. (Id. at p. 18–20.)[9] Plaintiff had a consult with Dr. Chaudhary on January 4, 2016, and Defendant Gardner saw Plaintiff on

---

[9] As noted above, in March 2016, the GDC revised its Hepatitis C pre-therapy checklist once Harvoni became the medication to be used to treat Hepatitis C. In order to receive Harvoni/treatment, this checklist was to be completed, a gastroenterologist had to recommend the treatment, and the GDC Medical Director, Billy Nichols, had to approve the treatment. (Doc. 62-2, p. 3.) Defendant Gardner declares she could not decide whether an inmate received treatment for Hepatitis C, as she is licensed in family medicine and does not have the specialized training to make this determination. (Doc. 62-4, pp. 7–8.)

January 6, 2016. Defendant Gardner submitted a consult request that Plaintiff have a right upper quadrant ultrasound and alpha-feto protein and fibrosure tests, per Dr. Chaudhary's requests, and to schedule a follow-up with Dr. Chaudhary in three (3) months. (Id. at p. 20.) Plaintiff's fibrosure test results indicated that he had severe fibrosis of the liver, and his other lab work showed he had Genotype 1A of the Hepatitis C virus and a viral load of 6452352 H. (Doc. 62-6, pp. 8–9, 14.) Defendant Gardner maintains these tests and lab work results were requirements of the pre-therapy checklist, (doc. 62-6, p. 22; doc. 62-4, p. 9), which, in turn, are requirements for an inmate to receive treatment. See Shaw, 2013 WL 326208, at *3.

Defendant Gardner saw Plaintiff again on January 25, 2016, and informed him she was ordering the tests necessary for completion of the pre-therapy checklist and to inform Plaintiff regarding the treatment process. (Doc. 62-6, p. 16; Doc. 62-4, pp. 9–10.) Between this date and April 19, 2016, Plaintiff had a second fibrosure test, an abdominal sonogram, and additional bloodwork, all of which Defendant Gardner reviewed. (Doc. 62-6, pp. 17–20, 23.)

On April 19, 2016, Dr. Chaudhary recommended Plaintiff undergo a twelve-week course of Harvoni. Plaintiff agreed to take Harvoni on April 21, 2016, if he were approved for this treatment. (Id. at p. 21.) Plaintiff began Harvoni treatment on May 23, 2016, (id. at p. 26; doc. 67-1, p 7), and his June 27, 2016, lab work, which Defendant Gardner reviewed on July 11, 2016, revealed his viral count was not detectable. (Doc. 62-6, p. 33.) Plaintiff does not dispute that he continued his Harvoni treatment until August 21, 2016, at which time Plaintiff's viral load was still undetectable. (Doc. 62-4, p. 12.) Nor does Plaintiff dispute Defendant Gardner's assertion that he "will continue to be monitored to ensure that the Hepatitis C virus has been eradicated."[10] (Id.)

---

[10] Plaintiff submitted a printout regarding mandatory nurse teaching sessions a patient must undergo prior to starting Harvoni, which he claims he did not receive. (Doc. 68-1, pp. 3, 7.) This printout appears to

Defendant Gardner was undeniably aware of Plaintiff's status as Hepatitis C-positive. However, Plaintiff fails to create a genuine dispute as to any fact material to his deliberate indifference claims. At best, Plaintiff shows a difference of opinion as to a course of treatment. However, a difference of opinion as to a course of treatment does not amount to an Eighth Amendment violation. Jones v. Fogam, No. CV413-131, 2014 WL 545404, at *2 (S.D. Ga. Feb. 12, 2014) (noting a mere difference of opinion regarding preferred course of treatment is not an Eighth Amendment violation; rather, a plaintiff must show he has a serious medical need and that defendant's response was "poor enough to constitute an unnecessary and wanton infliction of pain or risk of serious damage to future health.") (quoting Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011), and Roe v. Elyea, 631 F.3d 843, 858 (7th Cir. 2011)).

What is more, from the time that Defendant Gardner became the Medical Director on June 1, 2014, she consistently attended to Plaintiff's serious medical needs. During his deposition, Plaintiff testified that Defendant Gardner falsely stated that Plaintiff was getting proper treatment for his Hepatitis C because Plaintiff claims he was in fact receiving no treatment. (Doc. 62-9, p. 8.) However, the undisputed evidence of record, including Plaintiff's medical records, entirely belies this unsupported and conclusory testimony.[11] "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380, (2007). Moreover, as the party opposing summary judgment, Plaintiff "must do more than simply show

have been received from a relative of Plaintiff's, (id. at p. 5), and has no bearing on whether Defendants were deliberately indifferent to Plaintiff's serious medical needs. At most, Plaintiff's filing shows his dissatisfaction with the manner of treatment he received.

[11] Plaintiff testified during his deposition that he had no documentation other than his medical records to support his contention he received no treatment for his Hepatitis C. (Doc. 62-9, pp. 8–9.) However, the record is replete with evidence that Plaintiff received medical care and treatment, as discussed herein.

that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Id.

The medical records establish that Defendant Gardner followed GDC's protocols by referring Plaintiff to a Hepatitis C specialist, Dr. Chaudhary, and by following that specialist's recommendations. Shaw, No. CV 311-027, 2013 WL 326208, at * 8 (noting that only a gastroenterologist or specialized consultant could recommend treatment for Hepatitis C, so all the jail doctor could do was refer plaintiff to such a doctor). Dr. Chaudhary recommended in 2014 that Plaintiff come back in 2015—an entire year later—for *possible* treatment for his Hepatitis C. By way of a consult request, Dr. Gardner made certain that Plaintiff had that follow-up appointment. (Doc. 62-5, p. 14.) When Plaintiff went back to see Dr. Chaudhary in October 2015, he recommended Plaintiff come back for possible treatment in January 2016. Dr. Gardner then ordered the tests and lab work necessary for the treatment to begin pursuant to the pre-therapy checklist. When Dr. Chaudhary recommended Plaintiff undergo Harvoni treatment for Hepatitis C in April 2016, Plaintiff began that treatment the next month. Plaintiff ended this treatment in August 2016, and it appears Plaintiff's Hepatitis C has been cured.

Given these undisputed facts, no rational juror could find that Defendant Gardner exhibited deliberate indifference to Plaintiff's medical needs through her treatment of his Hepatitis C. The undisputed and objective record evidence establishes that, from the time she became aware of Plaintiff's medical needs after her arrival at Smith State Prison on June 1, 2014, through the conclusion of Plaintiff's treatment in August 2016, Defendant Gardner attended to his medical needs within her and Dr. Chaudhary's medical judgment and the GDC's policies. Any delay in Plaintiff receiving Harvoni treatment was due to the evaluation of Plaintiff's

condition, including diagnostic tests and the professional recommendations of Dr. Chaudhary, upon whom Defendant Gardner was entitled to rely. Moreover, Defendant Gardner did not exhibit deliberate indifference by following the GDC's pre-therapy checklist as to Plaintiff.[12] Given the undisputed factual record that Defendant Gardner provided regular care and monitoring of Plaintiff's Hepatitis C and then followed Dr. Chaudhary's recommendations and GDOC's policies as to his course of treatment, Plaintiff cannot establish deliberate indifference as to Defendant Gardner. See Black v. Ala. Dep't of Corr., 578 F. App'x 794, 795 (11th Cir. 2014) (affirming dismissal of deliberate indifference claims against prison officials where prisoner plaintiff received care and monitoring of Hepatitis C and had not received antiviral drug treatment because he was ineligible for drug treatment based on Department of Corrections' policy); Loeber v. Andem, 487 F. App'x 548, 549 (11th Cir. 2012) (failure to prescribe antiviral medication to treat prisoner's Hepatitis C and to instead provide alternative treatment did not establish a cognizable deliberate indifference claim because doctor's decision to prescribe antiviral medication for Hepatitis C is a highly individualized determination that depends on many factors); Gillentine v. Corr. Med. Servs., Inc., No. 5:11-cv-02694-RDP-TMP, 2016 WL 7325708, at *10 (N.D. Ala. Dec. 16, 2016) (granting summary judgment to defendants on plaintiff's claims that defendants exhibited deliberate indifference by delaying his effective treatment for Hepatitis C where prison medical officials monitored plaintiff's Hepatitis C for

---

[12] The Court notes Plaintiff's submission of the Affidavit of Wendell Smith. (Doc. 67-2.) Mr. Smith declares he suffered from Hepatitis C and was prescribed Harvoni without having to go through all of the pre-therapy checklist requirements Plaintiff did. (Id. at pp. 1–2.) However, this Affidavit fails to speak to whether Defendant Gardner or the other two Defendants were deliberately indifferent to *Plaintiff's* serious medical needs, even accepting the declarations in this Affidavit as true and viewing these facts in the light most favorable to Plaintiff. Simply because one inmate may have received a more prompt or efficient form of treatment than Plaintiff does not necessarily imply that prison officials were deliberately indifferent to Plaintiff. Moreover, excusing one prisoner from a prison policy or procedure, such as the pre-therapy checklist, does not mean that it was deliberately indifference to apply that policy or procedure to Plaintiff or that excusing the other prisoner could plausibly be the reason that prisoner did not have scarring of his liver. (See Doc. 67-1, p. 5.)

years, provided treatment for the secondary consequences of his disease, periodically assessed plaintiff for antiviral treatment eligibility, and eventually treated plaintiff's condition with Harvoni).

Further, even if Plaintiff could establish that Defendant Gardner's deliberate indifference caused a delay in his treatment, he must place verifying medical evidence in the record "to establish the detrimental effect of the delay[.]" Shaw, 2013 WL 326208 at *6 (internal citation omitted). Plaintiff has failed to do so. The only evidence Plaintiff placed in the record is two health services request forms dated December 24, 2015, and March 29, 2016, in which he claimed the Hepatitis C virus caused skin problems and pain in his left stomach, respectively. (Doc. 32, pp. 22, 23.) These documents are not "verifying medical evidence"; rather, they express physical conditions which Plaintiff, in his lay opinion, may have experienced as a result of Hepatitis C. Moreover, these documents—even if considered to be verifying medical evidence—do not show that any perceived delay in treatment exacerbated Plaintiff's Hepatitis C. See Hairston v. Negron, 557 F. App'x 884 (11th Cir. 2014). Nor can any perceived delay in receiving treatment here be deemed deliberate indifference. Kuhne v. Fla. Dep't of Corr., 618 F. App'x 498, 504 (11th Cir. 2015) ("'Deliberate indifference' can include 'the delay of treatment for obviously serious conditions where it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified.'") (quoting Harper v. Lawrence Cty., 592 F.3d 1227, 1235 (11th Cir. 2010)).

Even when viewing all of the evidence in favor of Plaintiff, no rational juror could find in his favor on his claim that Defendant Gardner was deliberately indifferent to his serious medical needs. In fact, the evidence before the Court reveals that Defendant Gardner followed the

GDC's protocols and Dr. Chaudhary's recommendations regarding Plaintiff's Hepatitis C and treatment thereof. While Plaintiff argues that Defendant Gardner should have employed different tests and administered different treatments, this is an inadequate basis for a deliberate indifference claim. Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (reversing district court denial of summary judgment because "whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (citing Estelle, 429 U.S. at 107); Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) (A "simple difference in medical opinion" does not give rise to a constitutional violation.).

For all of these reasons, the Court should **GRANT** this portion of Defendants' Motion and **DISMISS** Plaintiff's claims against Defendant Gardner.[13]

---

[13] Given this recommendation, the Court need not delve deeply into Defendant Gardner's qualified immunity arguments. Martinez v. Burns, 459 F. App'x 849, 851 n.2 (11th Cir. 2012) (unnecessary to address defendants' entitlement to qualified immunity when summary judgment properly granted based on plaintiff's failure to sustain his Eighth Amendment deliberate indifference claim). However, even if the Court were to determine there is a genuine dispute of material fact as to whether Defendant Gardner was deliberately indifferent to Plaintiff's serious medical needs, Defendant Gardner is entitled to qualified immunity. Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Lee v. Ferraro, 284 F.3d 1188, 1193–94 (11th Cir. 2002). To determine "whether the law clearly established the relevant conduct as a constitutional violation at the time [the defendants] engaged in the challenged acts," the defendants must have had "fair warning" that their conduct violated a constitutional right. Jones v. Fransen, 857 F.3d 843, 851 (11th Cir. 2017) (citing Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (citations and quotation marks omitted)). In order to demonstrate "fair warning" and defeat qualified immunity, Plaintiff must "point to binding precedent that is materially similar," or show the challenged conduct violated federal law with "obvious clarity" such that "every reasonable government official facing the circumstances would know that the official's conduct" was unlawful. Id. at 852; Gaines v. Wardynski, 871 F.3d 1203, 1209 (11th Cir. 2017) (binding precedent comes from "the United States Supreme Court, the Eleventh Circuit, or the highest court in the relevant state") (citation and alteration omitted). The facts presented at summary judgment establish this is not an "obvious clarity" case and further show that Defendant Gardner had no "fair warning" that her challenged conduct was unlawful. Plaintiff has not pointed to any binding precedent that would have put Defendant Gardner on notice that her evaluation and treatment of Plaintiff violated

## B.     Defendant Henry

Defendant Henry served as the Deputy Warden of Care and Treatment at Smith State Prison from May 16, 2014, through October 31, 2015, when she retired from the GDC. (Doc. 62-1, pp. 11–12.)  Plaintiff maintains Defendant Henry failed to investigate or otherwise respond to the grievance he filed regarding the lack of treatment for his condition.  Plaintiff alleges Defendant Henry should have taken action to ensure he received treatment for his Hepatitis C.  (Doc. 62-9, p. 7.)  Plaintiff asserts Defendant Henry failed to meet with him to discuss the treatment he was not receiving or to name the medication Plaintiff had been taking. (Doc. 67-1, p. 12.)

Defendant Henry has filed an Affidavit in support of Defendants' Motion for Summary Judgment.  (Doc. 62-7, p. 2.)  Therein, Defendant Henry claims that, although she did not provide hands-on medical care to inmates in her capacity as the Deputy Warden of Care and Treatment, she was responsible for ensuring that inmates received constitutionally adequate medical care.  (Id.)  Defendant Henry avers that Plaintiff wrote to her and complained about not receiving appropriate care for his Hepatitis C.  Defendant Henry states that she met with

---

his Eighth Amendment rights.  On the contrary, the binding precedent indicates that Defendant Gardner did not "violate clearly established" federal law.  To be clear, if Defendant Gardner had ignored Plaintiff's Hepatitis C and provided no treatment or attention to this serious medical need, that conduct would have violated clearly established precedent.  See, e.g., Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (prison medical administrator and physician's alleged complete failure to treat Hepatitis C condition amounted to deliberate indifference).  However, binding precedent would not have provided fair warning to a reasonable person in Defendant Gardner's position that her treatment of Plaintiff violated his Eighth Amendment rights.  Plaintiff has not cited, and the Court is not aware, of any binding precedent holding that a prison medical official provides constitutionally deficient treatment where she evaluates the prisoner's Hepatitis C, refers the prisoner to a specialist for treatment, and then follows that specialist's recommendations, as well as departmental policies, when rendering treatment.  To the contrary, in materially similar cases, the Eleventh Circuit has held (albeit in unpublished opinions) that a prison medical official does not violate the Constitution by acting as Defendant Gardner did in this case. Black, 578 F. App'x 794; Loeber, 487 F. App'x 548.  Moreover, to the extent Defendant Gardner relied upon her own medical judgment in treating Plaintiff, the law is clearly established that a difference of opinion as to her judgment or even negligence in exercising her judgment does not establish deliberate indifference. Melton, 841 F.3d at 1223; Adams, 61 F.3d at 1545; Waldrop, 871 F.2d at 1033.

Defendants Gardner and Allen to determine Plaintiff's status and what treatment, if any, Plaintiff should receive for his Hepatitis C. (Id.) During these meetings, she also reviewed Plaintiff's medical records, which satisfied Defendant Henry that Plaintiff was receiving proper treatment for his Hepatitis C. (Id.)

Defendant Henry also asserts she was not personally involved in processing or responding to Plaintiff's grievance, nor did she see or review health service request forms as part of her general duties. (Id. at pp. 2–3.) If she had seen any of Plaintiff's request forms while she was the Deputy Warden at Smith State Prison, Defendant Henry states that she would have consulted with Defendant Gardner and/or Defendant Allen to ensure Plaintiff received proper treatment. (Id. at p. 3.) Defendant Henry insists she had no reason to believe that Plaintiff was not receiving proper treatment for his Hepatitis C. (Id.)

Even viewing the evidence in the light most favorable to Plaintiff and resolving any factual disputes in his favor, no rational juror could find that Defendant Henry was deliberately indifferent to Plaintiff's medical needs. Plaintiff does not provide any record evidence or even offer a supported allegation to contradict Defendant Henry's account of the actions she took when she received his correspondence regarding his medical treatment. Thus, the undisputed facts establish that she met with Defendants Gardner and Allen and reviewed Plaintiff's medical records upon learning of Plaintiff's complaints. As discussed above, that review would have revealed that, at the time Defendant Henry served as the Deputy Warden of Care and Treatment, Plaintiff was being seen by a Hepatitis C specialist, Dr. Chaudhary, and that his needs were being tended to by Defendant Gardner. Though Defendant Henry was aware of Plaintiff's status as Hepatitis C-positive, she was entitled to rely upon these doctors' treatment of that condition, including their medical judgment regarding the timing of treatment. Williams v. Limestone Cty.,

198 F. App'x 893, 897 (11th Cir. 2006) ("[S]upervisory officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care.") (citations omitted). There is nothing before the Court indicating Defendant Henry ignored Plaintiff's medical needs or was otherwise deliberately indifferent to his needs.[14]

Further, to the extent that Plaintiff seeks to hold Defendant Henry liable based not on her personal involvement in his case, but instead, on her supervisory position as Deputy Warden of Care and Treatment, that effort is unavailing. Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of *respondeat superior*. Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998).

Accordingly, the Court should **GRANT** this portion of Defendants' Motion and **DISMISS** Plaintiff's claims against Defendant Henry.[15]

---

[14] This case does not present a scenario where the supervisory defendant was alerted to a situation by a prisoner and her review revealed that the medical department had entirely ignored the prisoner's request for medical treatment. Rather, in this case, the undisputed facts reveal that Defendant Henry investigated the situation and received evidence that the medical professionals had been attending to Plaintiff's medical needs. Indeed, for much of Defendant Henry's seventeen-month tenure as the Deputy Warden of Care and Treatment, Dr. Chaudhary had prescribed essentially a twelve-month waiting period to assess whether Plaintiff should receive further treatment.

[15] Given this recommendation, the Court need not delve deeply into Defendant Henry's qualified immunity arguments. Martinez, 459 F. App'x at 851 n.2. However, even if the Court were to determine there is a genuine dispute of material fact as to whether Defendant Henry was deliberately indifferent to Plaintiff's serious medical needs, Defendant Henry is entitled to qualified immunity. The standard for qualified immunity is noted above in reference to Plaintiff's claims against Defendant Gardner. Binding precedent would not have provided fair warning to a reasonable person in Defendant Henry's position that she violated the Constitution by taking no further action on Plaintiff's complaints after she reviewed his medical records and spoke to Defendants Gardner and Allen. Plaintiff has not cited, and the Court is not aware, of any binding precedent that requires a prison official to do anything more than Defendant Henry did in this case. To the contrary, Eleventh Circuit case law indicates to a person in Defendant Henry's supervisory position that she is entitled to rely upon the judgment of the medical professionals treating the prisoner. Keith v. DeKalb Cty., 749 F.3d 1034, 1050 (11th Cir. 2014) (the law does not require that prison officials ignore the determination and recommendation of medical staff); Williams, 198 F. App'x at 897.

### C.    Defendant Allen

Plaintiff contends Defendant Allen was aware of his health services request on July 6, 2011, since she signed it, yet she failed to reasonably respond to his request by providing him with treatment for Hepatitis C.  (Doc. 64-1, pp. 2–3; Doc. 67-1, p. 6.)  Additionally, Plaintiff asserts that, had Defendant Allen responded properly to his request, he would not have had fibrotic change and scarring to his liver.  (Doc. 64-1, p. 3.)  Plaintiff also asserts that Defendant Allen signed his grievance and said proper procedures were taken.  However, Plaintiff contends he did not receive the treatment that was directed by the specialist.  (Doc. 62-9, p. 8.)

Defendant Allen avers she is a registered nurse and was the Director of Nursing from February 1, 2007, to September 30, 2013, and the Health Services Administrator from October 1, 2013, until August 1, 2015, at Smith State Prison.  When she was the Director of Nursing, Defendant Allen asserts she provided hands-on care to inmates for routine, relatively simple medical issues, but she could not write prescriptions for inmates or make medical decisions about complex, chronic conditions such as Hepatitis C.  (Doc. 62-1, p. 13.)  Defendant Allen contends that she did not have the authority in this position to ensure that inmates received treatment for Hepatitis C, as the Medical Director at Smith State Prison and the GDC's guidelines provided for that treatment.  As a specific example, Defendant Allen notes that, in a health service request form dated June 30, 2011, when she wrote that Plaintiff was to have a follow-up appointment in a month, he should receive Indocin, and he should have labs scheduled, she was merely writing orders that a doctor, physician's assistant, or nurse practitioner had given her.  (Id. at p. 14.)  Defendant Allen states she did not provide hands-on medical care to inmates in her position as Health Services Administrator but generally ensured that the inmates received constitutionally adequate medical care.  (Id. at p. 13.)

Defendant Allen also states she reviewed Plaintiff's medical records to assist the Grievance Coordinator in responding to Plaintiff's Grievance Number 180331. Defendant Allen asserts she prepared a statement after her review of Plaintiff's medical records and noted Plaintiff had been approved to see a specialist regarding his Hepatitis C. However, Smith State Prison staff had no control over the scheduling of that appointment, according to Defendant Allen. Defendant Allen contends it appeared to her that Plaintiff had received appropriate care for his Hepatitis C. (Id. at p. 14.)

Even resolving any and all factual disputes in Plaintiff's favor, no rational juror could find for Plaintiff as to his claims against Defendant Allen. The undisputed facts establish that, as both the Director of Nursing and the Health Services Administrator, Defendant Allen did not have any independent authority to direct or provide Plaintiff with treatment for his Hepatitis C. As discussed above, throughout the pertinent time period, Plaintiff's Hepatitis C was being evaluated and treated by physicians. In her capacity as a registered nurse, Defendant Allen relied upon the judgment of the physicians who were conducting those evaluations and administering that treatment. See McClary v. Lightsey, No. 5:14-CT-3039-FL, 2017 WL 829237, at *13 (E.D.N.C. Mar. 2, 2017), aff'd sub nom., McClary v. Lawson, 692 F. App'x 709 (4th Cir. 2017) (dismissing deliberate indifference claims against defendant nurses because they "are entitled to rely upon the physicians' orders"). This is not a situation where a nurse denied a prisoner access to a physician, refused to provide a prescribed treatment, or otherwise ignored the prisoner's serious medical needs. Moreover, there is no evidence that any delay in Plaintiff's treatment was caused by any decision by Defendant Allen, much less any deliberate indifference on her part.

In addition, Plaintiff fails to create a genuine dispute as to Defendant Allen's authority to provide hands-on treatment in her position as the Health Services Administrator. The undisputed

evidence establishes that Defendant Allen merely reviewed Plaintiff's medical records to respond to his grievance as part of her duties as the Health Services Administrator. (See, e.g., Doc. 62-7, p. 10.) Thus, Plaintiff fails to show that, in this capacity, Defendant Allen was personally liable for his medical care and treatment. Knop v. Warden, No. CIV.A. 14-10185, 2015 WL 1132652, at *3 (E.D. Mich. Feb. 4, 2015) ("[M]ere participation in the grievance process, including signing a grievance response, is insufficient to show personal involvement. Rather, liability under § 1983 must be based upon active unconstitutional behavior, not a 'mere failure to act.'") (quoting Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999), and Lee v. Mich. Parole Bd., 104 F. App'x 490, 493 (6th Cir. 2004)), *report and recommendation adopted*, No. 14-10185, 2015 WL 1132696 (E.D. Mich. Mar. 11, 2015).

For all of these reasons, the Court should **GRANT** this portion of Defendants' Motion and **DISMISS** Plaintiff's claims against Defendant Allen.[16]

## II.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party

---

[16]    Given this recommendation, the Court need not delve deeply into Defendant Allen's qualified immunity arguments. Martinez, 459 F. App'x at 851 n.2. However, even if the Court were to determine there is a genuine dispute of material fact as to whether Defendant Allen was deliberately indifferent to Plaintiff's serious medical needs, Defendant Allen is entitled to qualified immunity. The standard for qualified immunity is noted above in reference to Plaintiff's claims against Defendant Gardner. Binding precedent would not have provided fair warning to a reasonable person in Defendant Allen's position that she violated the Constitution in her attending to Plaintiff's medical needs. Plaintiff has not cited, and the Court is not aware, of any binding precedent that requires a prison nurse to do anything more than Defendant Allen did in this case. Eleventh Circuit case law did not indicate to a prison nurse such as Defendant Allen that she could not rely upon the medical judgment of the physicians that were treating plaintiff and that she violated the Constitution by carrying out those physicians' orders. Moreover, to the extent that Defendant Allen relied upon her own medical judgment in treating Plaintiff, the law is clearly established that a difference of opinion as to her judgment or even negligence in exercising her judgment does not establish deliberate indifference. Melton, 841 F.3d at 1223; Adams, 61 F.3d at 1545; Waldrop, 871 F.2d at 1033.

proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action and the parties' Motions for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, **DENY** Plaintiff's Partial Motion for Summary Judgment, and **DISMISS** Plaintiff's Complaint. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 30th day of January, 2018.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA